## AFFIDAVIT OF SPECIAL AGENT JAY GODINO IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT CHARGING MOHAMED SOLTANI

I, Jay E. Godino, having been duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 2017. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). I am currently assigned to the Boston Group VI Field Office. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by prohibited persons, and the use of firearms in drug trafficking crimes. I am a graduate of the ATF National Academy and of the Federal Law Enforcement Training Center. Prior to my employment with ATF, I was a Police Officer with the Framingham (MA) Police Department. I am also a graduate of Becker College where I received a Bachelor's degree in Business Administration.

1. During the course of my law enforcement career, I have conducted and been involved in numerous firearm and drug-related investigations, arrests, seizures, undercover operations and search warrants. I have written and/or participated in the execution of numerous state and federal search warrants, and have debriefed defendants, informants, and witnesses with personal knowledge regarding firearms and narcotics trafficking activities and the operation of firearms and narcotics trafficking organizations.

### Purpose of the Affidavit

2. This affidavit is being submitted in support of a criminal complaint charging MOHAMED SOLTANI a/k/a "Momo Stacks" with dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) on January 22, 2019, January 31, 2019, February 9, 2019 and February 20, 2019, May 3, 2019 and May 21, 2019.

3. The facts in this affidavit come from my personal observations and review of records and other documents, my training and experience, and information obtained from other law enforcement officers and federal agents and witnesses. This affidavit is intended merely to show that there is probable cause for the requested complaint and does not set forth all of the information that I have learned during this investigation.

**Probable Cause To Believe That a Federal Crime Was Committed**

4. Starting in late January of 2019, under the direction of the ATF, a cooperating witness (hereinafter referred to as "CW-1") made a series of controlled buys of firearms from SOLTANI. CW-1 first reported a male who was actively engaged in the trafficking of firearms and distribution of narcotics, whom CW-1 knew as "Momo Stacks."[1] CW-1 identified "Momo Stacks" as an associate of the Bloods & 18th Street gangs operating in the greater Chelsea/East Boston area. CW-1 provided a phone number (857-265-4820) for and photograph of Momo Stacks. Investigators identified Momo Stacks as SOLTANI.

5. Except where otherwise noted, each of the controlled buys described below followed the same procedure. Prior to the controlled purchase, agents met with and searched the CWs for contraband with negative results. Agents equipped the CWs with a vehicle containing a recording device which recorded the transaction in both audio and video. Agents then provided

---

[1] CW-1 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-1's identity and have met with CW-1 personally. CW-1 has provided accurate, truthful, and reliable information to law enforcement, including the ATF, in the past and continues to do so to the present. CW-1 has a criminal history which includes charges for trafficking a controlled substance, assault and battery, larceny of a motor vehicle, possession with intent to distribute marijuana, unarmed robbery, assault by means of a dangerous weapon, threatening to commit a crime, intimidation, being a disorderly person and operating a motor vehicle with a suspended license. CW-1 has no criminal convictions. CW-1 was arrested on October 26, 2019, for OUI - drugs. CW-1 is presently receiving monetary benefits from the ATF. CW-1 is also seeking protection from retaliation based upon CW-1's cooperation with law enforcement in this case, including possible relocation.

CW-1 with official government funds for the controlled purchase. Agents and officers maintained surveillance of the CWs during the transaction. Following the transaction, the CWs returned to a predetermined location, where the CWs provided agents with the contraband which had been purchased and agents again searched the CWs for contraband with negative results.

6. In late January of 2019, SOLTANI texted CW-1 a picture which depicted four pistols and multiple magazines. The text message read verbatim "[e]verything for sale excecpt bottom left thats my bitchhh" and quoted a price of nine hundred dollars for one pistol. The original picture is set forth below:



Agents directed CW-1 to arrange to purchase the pistol from SOLTANI on January 22, 2019.

7. On January 22, 2019, CW-1 made a controlled purchase of a 9 mm pistol from SOLTANI in Medford, Massachusetts. After following the procedures above, agents provided CW-1 with $900 in government funds, set up surveillance, and instructed CW-1 to purchase a

firearm from SOLTANI. Surveillance agents followed CW-1 and were directed to the emergency room parking lot of Lawrence Memorial Hospital, 170 Governors Avenue, Medford, Massachusetts, because CW-1 reported that SOLTANI changed the location of the sale. Surveillance units observed the following: a dark colored Honda sedan, bearing Massachusetts plate #3LB213 (the "dark Honda"),[2] operated by a lone male (later identified as SOLTANI) pulled into the lot and parked in front of but to the side of CW-1's vehicle. SOLTANI got out of the Honda and got into the front passenger seat of CW-1's vehicle. SOLTANI then got out of CW-1's vehicle but returned to it seconds later (according to the transmitter, to retrieve his keys), got out again and entered the dark Honda. At the meeting site, CW-1 provided agents with a CZ, Model: CZ75BD Police, 9mm semi-automatic pistol, bearing serial #B164914, and nine rounds of ammunition, which were inside a red Cream of Wheat box, a white t-shirt and a plastic Stop & Shop bag. I have reviewed the video/audio recordings of the transaction and confirmed that SOLTANI was the individual from whom CW-1 purchased the firearm.

8. On January 28, 2019, CW-1 was shown a photo array and identified a photograph of SOLTANI as Momo Stacks, from whom CW-1 purchased the firearm from on January 22, 2019.

9. On January 31, 2019, CW-1 made a controlled purchase of a .45 caliber pistol from SOLTANI in Winchester, Massachusetts.[3] After following the procedures above, agents provided CW-1 with $1,250 in government funds, set up surveillance, and instructed CW-1 to purchase a firearm from SOLTANI. Surveillance agents followed CW-1 to the parking lot of the Russell Hill

---

[2] I believe that the registered owner of the dark Honda was SOLTANI's girlfriend, whose name I know.
[3] The .45 caliber pistol was another in the picture sent by SOLTANI to CW-1 on January 18, 2019.

Medical Building, 955 Main Street, Winchester, Massachusetts. Prior to CW-1's arrival, surveillance units saw the dark Honda parked and idling in the parking lot. CW-1 arrived and parked beside the dark Honda. Surveillance saw a male (later identified as SOLTANI) exit the dark Honda and enter the front passenger seat of the UC vehicle and saw a female enter the Honda sedan while SOLTANI was in CW-1's vehicle with CW-1. A few minutes later, SOLTANI exited the CW-1's vehicle and reentered the dark Honda sedan, joining the female. Surveillance units followed the dark Honda from the parking lot to 66 Pleasant Street, Stoneham, Massachusetts. At the meeting site, CW-1 gave agents a black box containing an Armscor of the Phillipines (Rock Island Armory), Model: M1911-A1 FS, .45 caliber semi-automatic pistol, bearing serial #RIA1606245, sixteen rounds of ammunition and two .45 caliber magazines.

10. During the subsequent debriefing, CW-1 reported that SOLTANI chose the location of the meet because he said he needed to pick up his "girl;" that SOLTANI got into CW-1's car with a backpack, from which SOLTANI removed a black plastic box containing the pistol; and that SOLTANI said that he had previously owned the sold pistol for seven years. I have reviewed the video/audio recordings and confirmed that SOLTANI was the person from whom CW-1 purchased the .45 caliber pistol.

11. On February 9, 2019, CW-1 made a controlled purchase of an AK-47 style rifle from SOLTANI in Melrose, Massachusetts. On February 1, 2019, SOLTANI texted a picture of an AK-47 style rife to CW-1, which (according to SOLTANI) he obtained from a source in Lawrence; they negotiated a price of $1500. On February 2, 2019, SOLTANI texted a picture of two AK-47 style rifles. CW-1 attempted to arrange the purchase of both but SOLTANI told CW-1 prior to the transaction that the owner of the second did not want to sell it yet.

12. On February 9, 2019, after following the procedures above, agents provided CW-1 with $1,500 in government funds, set up surveillance at 66 Pleasant Street, Stoneham and the parking of lot of Whole Foods, 880 Main Street, Melrose, Massachusetts, and instructed CW-1 to purchase the firearm from SOLTANI. Surveillance followed CW-1 to Whole Foods parking lot; separately, agents saw SOLTANI come out of the door along the right rear corner side of 66 Pleasant Street, near the driveway, and enter the dark Honda as the operator and lone occupant, drive away from the address and arrive at the Whole Foods parking lot, parking beside CW-1's vehicle. SOLTANI entered the front passenger seat of CW-1's vehicle. According to CW-1, SOLTANI said that he paid $800 for the rifle, had a "connect" in New Hampshire and cheaper sources in the Boston area, and also spoke about his shooting tactics, training and mindset with firearms. Surveillance units observed SOLTANI exit the front passenger seat, return to the dark Honda, and leave the parking lot. At the prearranged location, CW-1 gave agents a Romarm/Cugir, Model: GP WASR-10, 7.62x39 caliber semi-automatic rifle, bearing serial #AC-3447-80, one round of ammunition and a brownish-purple colored cloth sleeve. I reviewed video/audio recordings and identified SOLTANI as the person from whom the firearm was purchased.

13. On February 20, 2019, CW-1 made a controlled purchase of a .45 caliber pistol from SOLTANI in Winchester, Massachusetts.[4] After following the procedures above, agents gave CW-1 $1,200 in government funds, set up surveillance at the Russell Hill Medical Building, 955 Main Street, Winchester, Massachusetts, and instructed CW-1 to purchase the firearm from SOLTANI. Surveillance units followed CW-1 to the parking lot at 955 Main Street, where CW-1 parked. Surveillance units reported the following: SOLTANI, in the dark Honda, parked next to CW-1's vehicle; SOLTANI got of the dark Honda carrying a white bag, and entered the front

---

[4] According to CW-1, this was another of the firearms from the text message in January, 2019.

passenger seat of CW-1's car; after about five minutes, SOLTANI got out of CW-1's car, without the white bag, and got back into the dark Honda; and SOLTANI pulled to the front of the building, a female got into the dark Honda, and they departed. At the prearranged location, CW-1 gave agents a Colt, Model: Defender, .45 caliber semi-automatic pistol, bearing serial #DR27609, two magazines, sixteen rounds of ammunition, and a white plastic bag. According to CW-1, SOLTANI placed a black glove on his hand prior to handling the pistol, discussed the features of both the pistol and ammunition at length (specifically, that the ammunition was "super hollow point" and manufactured to cause internal injuries to the human body), and, upon being told that CW-1 intended to sell the pistol, SOLTANI told CW-1 to keep that pistol and sell others instead. I reviewed the video/audio recordings and confirmed that SOLTANI was the person from whom the firearm was purchased.

14. On May 3, 2019, CW-1 made a controlled purchase of a .45 caliber rifle from SOLTANI in Revere, Massachusetts. After following the procedures above, agents gave CW-1 $2,000 in government funds, set up surveillance in the area of the Northgate Shopping Plaza, 339 Squire Road, Revere, Massachusetts, and instructed CW-1 to purchase the firearm from SOLTANI. Surveillance units followed CW-1 to the Northgate Shopping Plaza, where CW-1 parked in front of Eblens. Surveillance units then reported the following: SOLTANI, arrived in the dark Honda and parked next to the CW in the parking lot. SOLTANI got out of the Honda, retrieved a black bag from the Honda and subsequently entered CW-1's car. After about nine minutes, SOLTANI got out of CW-1's car with the black bag and got back into the dark Honda, and a short time later SOLTANI and CW-1 left the parking lot. At the prearranged location, CW-1 gave agents a Volunteer Industries Inc., Model: Commando 45, .45 caliber rifle, bearing serial #63163, forty-one rounds of ammunition and a small amount of marijuana as well as other items

obtained during the purchase. According to CW-1, SOLTANI entered CW-1's car with a black gym bag. SOLTANI drew a green bag out from the black bag which contained the firearm and parts. SOLTANI drew a white plastic bag out of the black bag which contained the ammunition. SOLTANI told the CW that he had just acquired the firearm from "his boy" in order to sell the firearm to the CW. I reviewed the video/audio recordings and confirmed that SOLTANI was the person from whom the firearm was purchased.

15.   On May 21, 2019, CW-1 made a controlled purchase of a 9mm pistol from SOLTANI in Stoneham, Massachusetts. After following the procedures above, agents gave CW-1 $1,200 in government funds, set up surveillance in the area of 20 Highland Avenue, Stoneham, Massachusetts, and instructed CW-1 to purchase the firearm from SOLTANI. Surveillance units followed CW-1 to the area of 20 Highland Ave, where CW-1 parked. Surveillance units then reported the following: SOLTANI, in the dark Honda, traveled on Gould Street and arrived at 20 Highland Avenue; SOLTANI entered CW-1's car; after about twelve minutes, SOLTANI got out of CW-1's car, a short time later SOLTANI pulled into the driveway at 66 Pleasant Street, Stoneham. At the prearranged location, CW-1 gave agents a Beretta, Model: PX4 Storm, 9mm semi-automatic pistol, bearing serial #PX170031 and seventeen rounds of ammunition. According to CW-1, SOLTANI entered CW-1's car with the pistol in a black plastic handgun case and the ammunition in a white plastic bag. SOLTANI sold the CW that his source of firearms was a Dominican male from Lawrence (MA). I reviewed the video/audio recordings and confirmed that SOLTANI was the person from whom the firearm was purchased.

16.   On February 30, 2019, and again on September 24, 2019, I confirmed that SOLTANI does not have a federal firearms license.

## Conclusion

17. Based on the information described above, I have probable cause to believe that, on or about January 22, January 31, February 9, February 20, May 3 and May 21, 2019, in Medford, Winchester, Melrose, Revere and Stoneham, Massachusetts, MOHAMED SOLTANI a/k/a "Momo Stacks" did engage in the business of selling firearms in violation of Title 18, United States Code, Section 922(a)(1)(A). In light of the possession of firearms described above committed by the defendant, I further request that agents/officers be allowed to execute any warrants without knocking and announcing in order as such actions would potentially place executing agents/officers in danger.

Sworn to under the pains and penalties of perjury.

JAY GODINO
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on October 28, 2019.

Honorable M. Page Kelley
United States Magistrate Judge